# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

CHAD ALLEN TURNER,                  )
                                    )
                Petitioner,         )
                                    )
v.                                  )          No. CIV 13-443-RAW-KEW
                                    )
JIM FARRIS, Warden,                 )
                                    )
                Respondent.         )

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction in Murray County District

Court Case No. CF-2009-155 for conspiracy to traffic a controlled dangerous substance

(methamphetamine) (Count 3), raising the following grounds for relief:

I.   The evidence was insufficient to support Petitioner's conviction for conspiracy to traffic methamphetamine.

II.  Petitioner's due process rights to a fair trial were violated because the State failed to establish the chain of custody for the drug evidence which formed the basis for his conviction for conspiracy to traffic.

III. Petitioner's due process rights to a fair trial were violated by the prosecutor's failure to disclose exculpatory evidence and the prosecutor's misconduct in closing arguments.

IV.  Petitioner's Fourteenth Amendment due process rights were violated because the charging documents failed to give adequate notice of the offense(s) charged.

V.   Petitioner's Fourteenth Amendment due process rights were violated when the trial court failed to instruct the jury on the lesser included

offense of conspiracy to possess methamphetamine.

VI.    The trial court in voir dire violated Petitioner's Fourteenth Amendment due process rights to a fair trial by diminishing and mis-defining the prosecution's burden to prove guilt beyond a reasonable doubt.

VII.   Petitioner was denied his Sixth and Fourteenth Amendment rights to the effective assistance of counsel at trial.

VIII.  Petitioner's retrial following the declaration of a mistrial violated double jeopardy.

Respondent has filed a response to the petition (Dkt. 10), and Petitioner has filed a reply to the response (Dkt. 14). The following records have been submitted for consideration in this matter:

A.    Petitioner's direct appeal brief.

B.    Petitioner's motion to supplement appeal record and request for evidentiary hearing.

C.    The State's brief in Petitioner's direct appeal.

D.    Summary Opinion affirming Petitioner's judgment and sentence.

E.    Petitioner's petition for rehearing.

F.    Order denying rehearing.

G.    Mistrial and trial transcripts.

H.    Trial exhibits.

I.    Original record.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal habeas

corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## Ground I: Sufficiency of the Evidence

Petitioner alleges the evidence was insufficient to support his conviction for conspiracy to traffic methamphetamine (Count 3). On direct appeal, the Oklahoma Court of Criminal Appeals (OCCA) denied relief as follows:

> [W]e find that the evidence, when viewed in a light most favorable to the State, was sufficient for any rational trier of fact to find the essential elements of conspiracy to traffic in methamphetamine beyond a reasonable doubt. *Eastlick v. State*, 90 P.3d 556, 559 (Okla. Crim. App. 2004). There was sufficient evidence of an agreement to traffic in methamphetamine between Turner and his co-defendants and sufficient evidence of overt acts in furtherance of the agreement. *Jones v. State*, 965 P.2d 385, 386 (Okla. Crim. App. 1998).

*Turner v. State*, No. F-2010-1128, slip op. at 3 (Okla. Crim. App. May 9, 2012) (Dkt. 10-4).

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

"[W]here a sufficiency challenge was resolved on the merits by the state courts, . . . AEDPA adds an additional degree of deference, and the question becomes whether the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard." *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) (citations and internal quotation marks omitted), *cert. denied*, 553 U.S. 1079 (2008). This standard is called "deference squared." *Hooks v. Workman*, 689 F.3d 1148, 1166 (10th Cir. 2012

(quoting *Young v. Sirmons*, 486 F.3d 655, 666 n.3 (10th Cir. 2007)). "Even if a state court resolves a claim in a summary fashion with little or no reasoning, [this court] owe[s] deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." *Id*. (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

To determine whether there was sufficient evidence presented at trial to sustain petitioner's conviction, the Court first must look to Oklahoma law for the elements of the crime. *See Jackson*, 443 U.S. at 324 n.16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003). Here, the prosecution was required to prove (1) Petitioner agreed with another to manufacture or possess 20 grams or more of a substance containing a detectable amount of methamphetamine, and (2) an overt act in furtherance of that agreement. Okla Stat. tit. 21, §§ 421, 423; Okla. Stat. tit. 63, § 2-408; Okla. Stat. tit. 63, §§ 2-415 (B)(1) & (C)(4)(a); OUJI-CR 2d 2-17, 2-19, 6-13 (Supp. 2008); (O.R. 216).

Petitioner alleges the OCCA's decision on this issue was incorrect, because the State had to affirmatively prove the substance found in his home was equal to 20 or more grams of methamphetamine. He argues the State failed to prove this element, because the methamphetamine "cook" had not been completed when the sheriff's deputy went through Petitioner's house, and only a small sample not equal to a trafficking amount tested positive

as methamphetamine. (Dkt. 3 at 14-17).

Under Oklahoma law, "[c]onspiracy is a crime, separate and distinct, from the underlying crime contemplated." *Jones v. State*, 128 P.3d 521, 543 (Okla. Crim. App. 2006). "The crime of conspiracy does not depend on the goal of the conspiracy being achieved, nor does it disappear if the goal is in fact achieved." *Littlejohn v. State*, 181 P.3d 736, 742 (Okla. Crim. App. 2008). A conspiracy requires proof of an agreement to commit a crime and some overt act by one or more of the parties in furtherance of the conspiracy. *McGee v. State*, 127 P.3d 1147, 1149 (Okla. Crim. App. 2005). Therefore, in order to convict Petitioner of conspiracy, the State was not required to prove the elements of the underlying crime of the successful manufacture or possession of twenty or more grams of methamphetamine. *Jones*, 128 P.3d at 543. Instead, the State was only required to prove that Petitioner agreed to manufacture or possess a trafficking amount of what he believed was methamphetamine. *See, e.g., Littlejohn*, 181 P.3d at 741 (noting that "one can be guilty of conspiring to commit a crime without the goal ever being accomplished").

Murray County Deputy Sheriff Jay McClure testified that on December 22, 2009, he was dispatched to Petitioner's residence for a burglary in progress. When he arrived and exited his patrol car, he noticed a chemical odor of anhydrous ammonia and ether which are precursors in the manufacture of methamphetamine. He saw one person running into the woods and a second person trying to get into the residence. On the patio, Deputy McClure observed some cans of ether and a pitcher containing a pink, powdery substance. McClure

suspected that methamphetamine was being manufactured. McClure spoke to Kirby Lawrence, the man who was trying to get inside the house, and then obtained a search warrant for the residence. Lawrence was taken into custody for outstanding felony warrants for possession of methamphetamine. (Tr. I, 97-101; Dkt. 11-3). Petitioner was charged by Information on December 30, 2009. (O.R. 1; Dkt. 11-7 at 13).

Deputy McClure took a sample weighing 2.63 grams from the contents of the pitcher and packaged it for analysis by the Oklahoma State Bureau of Investigation (OSBI). (Tr. I, 102, 128, 150;Tr. Vol. II, 270; State's Ex. 14A). He also weighed the remaining contents of the pitcher and conducted a field test on those contents. (Tr. I, 102). The contents of the pitcher weighed 56.9 grams and field tested positive for pseudoephedrine. (Tr. I, 102-03, 128; State's Ex. 5B & 12A). The sample taken from the pitcher and sent to the OSBI was analyzed, and it tested positive as methamphetamine. (Tr. I, 149-151; State's Ex. 13).

Kirby Lawrence testified he had been convicted and served time in prison for distribution and conspiracy to manufacture methamphetamine. He went to Petitioner's house to sell Petitioner some drugs and to manufacture drugs at the house. Lawrence had an agreement with Petitioner that a third of the manufactured drugs went to Petitioner, because he had furnished the place for the methamphetamine cook. Lawrence brought pseudoephedrine pills, a grinder, a funnel, and lye for the manufacture, and the other required supplies already were at Petitioner's house. On several previous occasions, Lawrence had manufactured more than 20 grams of methamphetamine at Petitioner's house. (Tr. I, 160-68,

178-180; Dkt 11-3).

Before leaving Lawrence in the house, Petitioner provided him with two large tea pitchers to produce the methamphetamine and showed Lawrence where the anhydrous ammonia was located in the basement. Petitioner helped Lawrence get all the supplies together and told Lawrence to do the manufacturing outside, about 50 yards from the house. Petitioner also told Lawrence to be careful, because his neighbor was the mother or grandmother of a police officer. Petitioner later returned to the house to get some "ice" and said he was leaving again to go to his girlfriend's house and to meet with Tim Lance. (Tr. I 169-71, 173-74, 178)

It is unlawful in Oklahoma to manufacture or possess 20 or more grams of a substance containing a detectable amount of methamphetamine. Okla. Stat. tit. 63, §§ 2-415 (B)(1) & (C)(4)(a). Here, the Court finds it was reasonable for the jury to conclude that when Lawrence entered Petitioner's home with enough pseudoephedrine to exceed the trafficking amount, and Petitioner assisted in and allowed Lawrence to proceed with the cook, Petitioner understood and agreed to traffic in methamphetamine. *See Soriano v. State*, 248 P.3d 381, 397-98 (Okla. Crim. App. 2011) (noting that one ounce of methamphetamine constitutes a "trafficking quantity" under Oklahoma law).

Although there was no direct testimony indicating Petitioner's knowledge of the amount of pseudoephedrine necessary to produce up to 20 grams of methamphetamine, there was admissible evidence regarding the past drug history between Petitioner and Lawrence,

upon which the jury could reasonably infer such knowledge. *See Carter v. State*, 177 P.3d 572, 575 (Okla. Crim. App. 2008) (holding that a conspiracy may be proven by circumstantial evidence).

After careful review of the record, the Court finds the evidence was sufficient under the standard of *Jackson v. Virginia*. The Court further finds the OCCA's decision on this claim was not contrary to, or an unreasonable application of Supreme Court law, and the decision was not based on an unreasonable determination of the facts presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Ground I of this habeas petition fails.

**Ground II: Chain of Custody**

Petitioner alleges in Ground II that the trial court erroneously admitted the drug evidence seized from his home without determining where or how it was stored from December 22, 2009, to January 5, 2010. He further claims the testimony concerning the sample taken from the pitcher was inconsistent, because the officer testified he mailed the sample to the OSBI, but the OSBI criminalist testified that the sample was personally delivered to her. Respondent asserts this claim relies on mere speculation and is an issue of state law that presents no basis for federal habeas corpus relief. The OCCA found no merit in the claim:

> [W]e find . . . Turner did not object to the chain of custody in this case, thus we review for plain error only. Okla. Stat. tit. 12, § 2104. The record in this case reveals no error that is plain or obvious, thus there can be no plain error. *Hogan v. State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006). Turner, on appeal, only speculates that tampering or alteration occurred, which is insufficient for suppression. *McCarty v. State*, 904 P.2d 110, 126 (Okla. Crim.

App. 1995); *Middaugh v. State*, 767 P.2d 432, 436 (Okla. Crim. App. 1988). *Turner*, No. F-2010-1128, slip op. at 3.

Respondent alleges this evidentiary claim is grounded in state law, and "[f]ederal habeas review is not available to correct state law evidentiary errors." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999), *cert. denied*, 519 U.S. 980 (1996). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)). "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (citing *Teague v. Looney*, 268 F.2d 506 (10th Cir. 1959)). Consequently, this claim is not cognizable, unless Petitioner demonstrates error "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is th essence of due process." *See Hooks*, 689 F.3d at 1180 (citations omitted). In considering the claim, this Court defers to the state court's interpretation of state law. *See Gonzales v. Tafoya*, 515 F.3d 1097, 1126-27 (10th Cir. 2008) (citing *Mansfield v. Champion*, 992 F.2d 1098, 1100 (10th Cir. 1993), *cert. denied*, 555 U.S. 890 (2008)).

> The purpose of the chain of custody rule is to guard against substitution of or tampering with the evidence between the time it is found and the time it is analyzed. Although the State has the burden of showing the evidence is in substantially the same condition at the time of offering as when the crime was

committed, it is not necessary that all possibility of alteration be negated. If there is only speculation that tampering or alteration occurred, it is proper to admit the evidence and allow any doubt to go to its weight rather than its admissibility.

*Alverson v. State*, 983 P.2d 498, 509 (Okla. Crim. App. 1999) (internal quotation marks and footnotes omitted), *cert. denied*, 528 U.S. 1089 (2000).

Under Oklahoma law, the requirement that an exhibit be identified or authenticated before its admission is satisfied through testimony that the exhibit is what it is claimed to be. *Fixico v. State*, 735 P.2d 580, 582 (Okla. Crim. App. 1987) (citing Okla. Stat. tit. 12, § 2105(B). A chain of custody provides circumstantial evidence supporting such a proffer. *Id.* A complete chain of evidence, however, does not require each link to have personal knowledge of every other link. *Jones v. State*, 507 P.2d 1267, 1270 (Okla. Crim. App. 1973). Instead, it "is only necessary that a reasonable person be able to logically assume from the testimony of each link that the chain was complete." *Id.*

Respondent alleges Petitioner's argument relies on speculation and fails to demonstrate grossly prejudicial error which rendered the trial fundamentally unfair. Because this was a conspiracy case, testing of the entire contents of the pitcher for the presence of methamphetamine was not required under Oklahoma law. Further, the evidence reflects that the contents of the pitcher, less the sample sent to the OSBI, was seized by Deputy McClure and stored in a sealed package until trial. (Tr. I, 123; State's Ex. 12 & 12A). There was no indication that the bag or its contents had been tampered with or altered. Finally, the sample taken from the pitcher and sent to the OSBI was sealed when received by the OSBI

11

criminalist, and it remained secured until testing.  (Tr. I, 149-51; 155-58; State's Exs. 14 & 14A).

Although there was some inconsistent testimony concerning whether Deputy McClure mailed the sample or submitted it in person to the lab, the Court finds the inconsistency did not prevent admission of the evidence.  (Tr. I, 102, 156).  There was no evidence that anyone other that Deputy McClure handled the evidence before it went to the lab.  (Tr. I, 102, 123, 149-50, 156).

Because the testimony presented at trial was sufficient to complete the chain of custody, the Court finds Petitioner has failed to demonstrate the admission of the drug evidence was so grossly prejudicial that it fatally infected the fairness of his trial.  *See Hooks*, 689 F.3d at 1180.  This ground for habeas relief fails.

**Ground III:  Prosecutorial Misconduct**

Petitioner alleges in Ground III that the prosecutor engaged in misconduct which denied him a fair trial.  He raised this claim on direct appeal, and the OCCA denied it on the merits:

> . . . Turner has failed to show that the witnesses were testifying in exchange for a deal on their own unresolved charges.  *See Reed v. State*, 657 P.2d 662 (Okla. Crim. App. 1983).  Further, defense counsel was free to cross-examine each witness about pending charges and their hope of lenient treatment in return for testifying, but failed to do so.  Turner has not shown that the prosecutor failed to disclose, to Turner, any deals made with witnesses prior to this trial.  Other prosecutorial misconduct occurring in closing argument, of which Turner now complains, was not met with contemporaneous objections, save for one instance.  All of the argument was well within the bounds of proper argument.  *See Hogan v. State*, 139 P.3d 907, 935-37 (Okla. Crim. App.

2006).

*Turner*, No. F-2010-1128, slip op. at 3-4.  Respondent asserts Petitioner has failed to show the OCCA's determination of this issue was contrary to, or an unreasonable application of, Supreme Court Law, *see* 28 U.S.C. § 2254(d), and, therefore, federal habeas relief is not warranted.

Petitioner alleges that before trial, defense counsel filed a motion to reveal the deals the State was offering its witnesses, and a hearing was held on the motion.  (Tr. I, 49-50). The prosecutor informed the trial court and defense counsel that his offer to Kirby Lawrence, the State's star witness, was a 20-year sentence, with 15 years "to do."  Lawrence's attorney, however, reserved the right to argue for a more lenient sentence.

The prosecutor stated that the offer was communicated to Lawrence's attorney, but the prosecutor had asked Lawrence's attorney not to relay the offer to Lawrence himself. Petitioner presumes that arrangement would allow Lawrence to testify that he was not appearing as a State's witness in exchange for a specific plea deal.  (O.R. 87-89; Motion Tr. 10).  Petitioner claims this evidence shows the prosecutor affirmatively misled the defense, the trial court, and the jury regarding the nature of the deal Lawrence would receive.  Shortly after Petitioner's trial, Lawrence entered a negotiated plea, not a blind plea, and received a 20-year sentence with 15 years in the penitentiary.  In addition, the conspiracy to manufacture and possession charges arising out of the incident that resulted in Petitioner's trial were to be dismissed upon payment of costs.  Lawrence was allowed to plead guilty to his old

methamphetamine charge in exchange for a 6-year sentence.

Petitioner also alleges the record strongly suggests that John Richburg, another State's witness, may have testified pursuant to a deal that never was revealed to the defense. At the time Richburg testified in Petitioner's trial, he faced acceleration of a deferred sentence in two felony cases. After Petitioner was convicted, Richburg's deferred sentences were not disturbed.

Petitioner further claims the prosecutor "made an egregious and extended effort to improperly align the jury with the community as a whole, law enforcement, the prosecutor personally, the system in general, and even the trial judge." (Dkt. 3 at 22). The trial judge *sua sponte* sought to correct the prosecutor's attempt to align the court with the prosecutor's office and other law enforcement. Petitioner argues, however, that the jury was not effectively admonished to disregard the statements.

Petitioner alleges the prosecutor also engaged in unwarranted character assassination in arguing that Petitioner had "slandered" the judicial system through an alleged statement. Lawrence had testified that Petitioner said he would "fix" Lawrence's old methamphetamine charge through his relationship with a woman who worked in the Court Clerk's office. (Tr. I, 174-75).

The prosecutor's alleged improper remarks were as follows:

[PROSECUTOR]: Folks, what I'm asking you to do today is to take out the hub. Take out the person who was bringing these people in. Take out the people that agreed to allow that to go on, bringing people in from other counties to Murray County to produce that poison in our community. . . . Now,

why am I asking you to do that?  Because Jay McClure went out there that night and he did something about the conspiracy.  He brought all of the reports into my office.  I did something about the conspiracy.  Judge Scaggs is conducting this trial and the system is doing something about the conspiracy.  Now, you have an opportunity to do something about the conspiracy.  Folks, I submit to you, it would be wrong for you not to do something about it.  It would just plain be wrong not to do something about what was going on at Chad Turner's house.

There's one other thing and then I'm going to close my opening part of my closing argument.  There was testimony that at a point in time Chad Turner told Kirby Lawrence not to worry about his Possession of Methamphetamine charges because he had connections, because Chad Turner had connections down at the courthouse and it was all going to be swept under the rug.  Folks, I submit to you, that is a slander to the criminal justice system in Murray County.  It is a slander to everyone who works in the criminal justice system.

[DEFENSE COUNSEL]: I'm going to object to the calling for public outcries.

THE COURT: Overruled.

[PROSECUTOR]:  I'm asking you to return a verdict of guilty in this case.  I'm asking you to do that to show Chad Turner--to show Chad Turner that no matter who he knows in the courthouse Jay McClure is not going to sweep it under the rug.  My office is not going to sweep it under the rug.  This judge is not going to sweep it under the rug.  We're going to have a trial, folks, no matter who you know down at the courthouse.  You need to let Chad Turner know that.  You need to let him know you don't do this in your community and get away with it. Thank you.

THE COURT: Ladies and gentlemen, I'm not on anybody's side here.  I have a job to do as the judge.  I explained to you what my function is and I will do that job no matter what counsel says.  So please understand that.

(Tr. II, 390-92).

Petitioner further alleges that in his final closing argument, the prosecutor misstated the law as given in the trial court's instructions on the conspiracy charge and told the jury

that because Petitioner was charged with conspiracy, it did not matter what the substance weighing 56.9 grams was. This statement was made despite the requirement that the State prove that Petitioner conspired to traffic in 20 or more grams of manufactured methamphetamine.

The prosecutor also allegedly improperly bolstered the State's case for the trafficking quantity by arguing outside the record and telling the jury that even if Deputy McClure had sent the entirety of the substance to the OSBI for analysis, the OSBI criminalist would have only analyzed a small portion to determine what the entirety of the substance contained. There was no testimony to support this statement.

The two alleged improper arguments were as follows:

Now, I guess we'll start with this. Let's suppose that instead of taking a sample of this and sending it into the OSBI, let's suppose Deputy Clary [sic] had sent the whole package into the OSBI. What do you think the OSBI chemist would have done? The OSBI chemist would have opened it up and taken a sample out of it and tested it to see what it was. Well, she tested the sample that Deputy McClure sent in. It was methamphetamine. Now, why would it also contain some pseudoephedrine? Because pseudoephedrine is used to make methamphetamine. But it has--this is methamphetamine. I asked her on the stand, assuming that [State's Exhibit] 14A came from this package and tested positive for methamphetamine, what would you say was in this package? What did she say? She said, methamphetamine. Methamphetamine.

Now, I want you to remember the Defendant is charged with conspiracy. It really wouldn't make any difference if that were methamphetamine, pseudoephedrine, or aspirin.

*Id.*

Allegedly taking advantage of defense counsel's failure to question Lawrence about

what leniency he expected to receive for his testimony, the prosecutor strongly implied Lawrence would be seriously punished with significant prison time, when this did not happen. The prosecutor also attacked Petitioner for exercising he right to a trial and told the jury that, unlike Lawrence and the other cooperating witnesses, Petitioner was the only one trying to hide his involvement:

> He says, [defense counsel] tells you that all of our witnesses, why, they're just getting off scot-free. Well, let's take a look at this. First of all, Kirby Lawrence is in jail right now. He talks about him running up and down the halls of the jail. You know, Kirby Lawrence would be tickled pink to trade places with any one of you folks and let you run up and down the hall of the jail while he's out on the streets. You said you'd decide the case from the evidence here. Has there been any evidence here that Kirby Lawrence is not going to go to prison? Has anybody told you that? Kirby Lawrence got up on the stand and, folks, he confessed. He confessed. He's not hiding what he did. I submit to you, there's only one person involved in this case trying to hide their involvement.

(Tr. II, 410).

Petitioner also claims the prosecutor unfairly appealed to societal alarm and went outside the record by telling the jury that Petitioner was a "Main Street" type who was in fact a Jekyll/Hyde big shot criminal, in contrast to the "kids" the District Attorney's Office prosecuted for marijuana possession:

> . . . I want to suggest something to you here. It is not unusual. I would submit to you, for people--"Main Street types," if you will, people that have businesses on Main Streets--to be one person in to the community in the daytime, 8:00 to 5:00, when their office is open, and be somebody else when the sun goes down and it's nighttime to be somebody else. Who they are when the office is closed, who they are when the sun goes down, they don't advertise it to folks. They don't run around telling people on Main Street what they're doing. How many times have you sat around--and maybe you have and maybe

you haven't--but have you thought about why are we prosecuting these kids for marijuana cigarettes?  Why don't we get some of the Main Street people, some of the big people, some of the people that are behind all of this, if you will, some of the hubs, some of the hubs?  Well, folks, meet Chad Turner.  . . .

(Tr. II, 412).

The prosecutor continued with his appeal to societal alarm, again going outside the evidence by telling the jury that Petitioner did not care whether any of the children in the community, including the jurors' children, used drugs.  The prosecutor also suggested the methamphetamine being manufactured at Petitioner's house would victimize the wider community, including children, although there was no evidence of any distribution in Murray County.  The jury was advised to send a "strong message" to Petitioner that his conduct would not be tolerated.  (Tr. II, 416).

The prosecutor continued by requesting the jury to trust him and by prefacing his request for a certain sentence with the words, "I want."  He asked the jury to impose a "healthy fine" in addition to imprisonment and commented that people should not be allowed to keep money from their criminal activities.  The evidence, however, did not show that Petitioner profited from his dealings in methamphetamine or that he was a dealer:

[Petitioner] told them how to get to his house to manufacture this poison.  He told Kirby Lawrence, I don't want you giving any of that to my boy, I don't want it around my boy.  Well, folks, what about someone else's boys?  What about somebody else's kids?  Ask yourselves what's going to happen to the product of this conspiracy?  What's going to happen to this stuff right here when it's finally refined out to where it's pure?  Where is it going to and who's going to use it?  I don't want any of it around my kids.  Chad Turner doesn't want any of it around his kid.  Well, do you think he cares whether it's around your kids?  Nasty stuff, folks.  As long as he's getting his, as long as it's not

around his kid he's getting his . . . .

Folks, I'm going to ask you on the Conspiracy to Manufacture Methamphetamine--now, listen to me, and I'm asking you to trust me on this-- I want a meaningful sentence. I want a sentence of 30 years in the Department of Corrections. Conspiracy to Traffic Methamphetamine, trust me, I want a meaningful sentence. I want a sentence of 30 years in the Department of Corrections. . . . The judge has instructed you there are also fines. I'm going to ask you to impose a healthy fine. People shouldn't be allowed to benefit and keep the profits of these types of activities. They shouldn't be allowed to make money off the misery of other people. I'm asking you to do that because what he did was wrong and it would be wrong for you not to do something about it and not to send a clear, strong message to him that we're not going to tolerate this conduct in Murray County. . . .

(Tr. II, 416-17).

In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). In order to be entitled to relief, [petitioner] must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the State's case. *See Darden*, 477 U.S. at 181-82.

*Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005), *cert. denied*, 547 U.S. 1181 (2006).

Regarding Petitioner's claim that he was denied due process by the prosecutor's alleged failure to disclose impeachment evidence, the Supreme Court has held that due process requires the State to disclose exculpatory and impeachment evidence favorable to the

accused. *United States v. Bagley*, 473 U.S. 667, 676 (1985). To establish a due process violation, a petitioner must demonstrate that the prosecution suppressed material evidence. *Id.* at 678. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682.

Here, Petitioner is complaining that a plea agreement between the prosecution and Lawrence was not disclosed prior to trial, and that the failure to disclose impeded defense counsel's ability to impeach Lawrence's testimony. Based on the 6-year prison sentence eventually imposed on Lawrence in a separate case, Petitioner accuses the prosecution of lying about the plea agreement.

During the opening statements of Petitioner's first trial which ended in a mistrial, the prosecutor referenced a plea deal with Lawrence, and defense counsel acknowledged his awareness of the deal. (Mistrial Tr. 8-10, 13-14, 19; Dkt. 11-1). The prosecutor stated that his deal with Lawrence was that if Lawrence cooperated with the State's case against Petitioner, Lawrence would receive a benefit through the disposition of his pending charges. (Mistrial Tr. 10). The prosecutor also stated that an "offer" had been conveyed to Lawrence's attorney, but Lawrence was not aware of the details of the offer. *Id.*

At Petitioner's second trial, which is at issue in this habeas action, the jury learned that Lawrence was facing charges of conspiracy to manufacture and possession with intent to

distribute, based on his conduct with Petitioner. (Tr. I, 198-99). There is no evidence, however, that the prosecution had completed any deal with Lawrence at the time of trial, or that a deal was not disclosed to Petitioner by the prosecutor. The jury was able to assess Lawrence's credibility based on his understanding that he was facing criminal charges and prison time for his actions.

Reversal in the context of a claim pursuant to *United States v. Bagley*, 473 U.S. 667 (1995), is only required when there exists a reasonable probability that, had the relevant impeachment been disclosed, the result of the proceeding would have been different. *Id*. at 678. Here, no impeachment evidence was withheld, because there was no completed deal with Lawrence before trial. The jury was able to assess Lawrence's credibility based on his testimony about his knowledge of the charges pending against him. The jury acquitted Petitioner of one charge and recommended a sentence well below the maximum on the charge of conspiracy to traffic methamphetamine (O.R. 224-26). He, therefore, cannot demonstrate that the result of his trial would have been different, even if his allegation of a non-disclosed deal were considered to be more than speculation. *Bagley*, 473 U.S. at 682. The Court finds the OCCA's decision on this issue was consistent with Supreme Court law.

Regarding Petitioner's complaints about the prosecutor's comments during closing arguments, the OCCA found the comments did not deny him a fair trial under the standard set forth in *Donnelly*. *Turner*, slip op. at 3-4. The fact the OCCA did not expressly cite to *Donnelly* does not change the correctness of its conclusion, nor the deference this Court owes

to the OCCA's conclusion. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (noting that the state court need not cite to, or even be aware of the Supreme Court's cases "so long as neither the reasoning nor the result of the state-court decision contradicts them"). In this case, the record shows the OCCA's decision that the prosecutor's comments fell within the broad range of argument afforded a prosecutor at trial was not contrary to, or an unreasonable application of *Donnelly*.

Petitioner also complains that the prosecutor improperly invoked societal alarm by aligning the jury with the community and the justice system and by discussing the dangers associated withe methamphetamine. He specifically argues the prosecutor should not have (1) called Petitioner the "hub" of the conspiracy, (2) referenced Petitioner's statement to Lawrence about keeping methamphetamine away from Petitioner's child, (3) highlighted evidence presented during trial about Petitioner's ability to take care of criminal charges for his friends, and (4) asked for severe punishment based on the crimes. (Tr. Vol, I, 175; Tr. Vol. II, 390-391, 412, 416).

This Court finds the prosecutor's challenged statements, when examined in the context of the entire trial, were based on the evidence presented at trial and were within the permissible bounds of closing argument. The Court further finds the statements did not so infect the trial with unfairness that Petitioner's conviction was a denial of due process. *See, e.g., Duckett v. Mullin*, 306 F.3d 982, 990 (10th Cir. 2002) (stating that "even an improper appeal to societal alarm typically does not amount to a denial of due process") (internal

quotations and citations omitted); *Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998) (observing that a prosecutor is allowed a "reasonable amount of latitude" in reciting evidence and drawing inferences from evidence); *Neill v. Gibson*, 278 F.3d 1044, 1061 (10th Cir. 2001) (stating that "not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation") (citation and internal quotation marks omitted).

The Court also finds no merit in Petitioner's complaint that the prosecutor misstated the law and evidence and bolstered the State's case during closing argument by stating that the State was not required to prove the substance seized from Petitioner's home was actual methamphetamine. (Tr. II, 409-10). The Court finds the comments were made in response to defense counsel's argument and were not misstatements of the law or evidence. As discussed above, "one can be guilty of conspiring to commit a crime without the goal ever being accomplished." *Littlejohn*, 181 P.3d at 741. Therefore, the State was not required to prove the entire substance found in Petitioner's home was actual methamphetamine. *See Duvall,* 139 F.3d at 795. *See also Darden v. Wainwright*, 477 U.S. 168, 182 (1986) ("Much of the objectionable content was invited by or responsive to the opening summation of the defense.").

Petitioner complains the prosecutor improperly vouched for Lawrence by stating he was in jail on pending drug charges. (Tr. II, 410). The record reflects this statement was not an indication of the prosecutor's personal belief in Lawrence's credibility, but was in response to defense counsel's argument that Lawrence was "running up and down the aisles

at the jail." (Tr. II, 393). The prosecutor's comments were based on the evidence that Lawrence was incarcerated on pending charges, and there was no error. *See Duvall*, 139 F.3d at 795.

Finally, Petitioner alleges the prosecutor improperly denigrated him by stating Petitioner was the only person trying to hide his involvement in the conspiracy. The prosecutor contradicted defense counsel's argument that Petitioner was just a businessman trying to raise his son, and he had no idea that methamphetamine was produced in his home. (Tr. II, 393-94, 400-403, 410-14, 416). The Court finds that when taken in context, the prosecutor's arguments were proper comments on the evidence that Petitioner was not just a businessman and father. Instead, Petitioner was connected to at least one drug dealer and several drug users, and he had allowed the manufacture of methamphetamine in his home. The arguments were proper deductions from the evidence and did not deny Petitioner a fair trial.

After careful review, the Court finds the prosecutor's challenged conduct and comments did not deny Petitioner a fundamentally fair trial. Therefore, the OCCA's determination of this claim was not contrary to, or an unreasonable application of Supreme Court law. Ground III of this habeas petition fails.

**Ground IV: The Information**

Petitioner next argues his Fourteenth Amendment right of due process was violated, because the charging documents in his prosecution failed to give adequate notice of the

charged offenses. He claims the Information provided constitutionally insufficient notice of the crime of conspiracy to traffic methamphetamine, because it only alleged an "on or before" date. He also complains that the prosecutor improperly expanded the time period without notice to include prior methamphetamine cooks which had taken place in his home before December 22, 2009. On direct appeal, he raised this claim with a claim that the admission of other crimes evidence denied him a fair trial. (Dkt. 10-4 at 4-5). The OCCA denied relief:

> [W]e find . . . that the Information was sufficient to give Turner notice of the charges against him and apprised him of what allegations he was to defend against at trial. *See Parker v. State*, 917 P.2d 980, 986 (Okla. Crim. App. 1996). The other crimes evidence was properly admitted to show an ongoing conspiracy, amounting to a criminal enterprise, and the Information reflected the dates the overt acts occurred resulting in the offenses charged.

*Turner*, No. F-2010-1128, slip op. at 4-5 (footnote omitted). Respondent alleges the OCCA's decision was not contrary to, or an unreasonable application of, Supreme Court law.

"The 'sufficiency of an indictment or information is primarily a question of state law.'" *Tapia v. Tansy*, 926 F.2d 1554, 1560 (10th Cir.), *cert. denied*, 502 U.S. 35 (1991) (quoting *Franklin v. White*, 803 F.2d 416, 418 (8th Cir. 1986)). The notice provided by the State in a charging instrument, however, must comport with the due process requirements of notice and a meaningful opportunity to defend. *See Jackson*, 443 U.S. at 314.

> An indictment [or charging information] need only meet minimal constitutional standards, and we determine the sufficiency of an [information] by practical rather than technical considerations. [A charging instrument] is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the

defendant to assert a double jeopardy defense.

*United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997) (internal citations omitted).

The OCCA found the Information reflected the dates of the overt acts of the ongoing conspiracy. Furthermore, Petitioner admitted on appeal that he received notice of the State's intent to introduce other crimes evidence concerning his prior manufacture and possession of methamphetamine in order to prove his knowledge, intent, and absence of mistake or accident with respect to the charged conspiracy. (Dkt. 10-1 at 34). Such evidence, which the jury was instructed to use for its intended purpose (O.R. 205) did nothing to impair Petitioner's ability to defend against the charged conspiracy. Because the OCCA's decision on this issue was consistent with clearly established Supreme Court law, Petitioner's argument on this claim fails.

**Ground V: Jury Instructions**

Petitioner alleges his due process rights were violated when the trial court failed to instruct the jury on the lesser included offense of conspiracy to possess methamphetamine. He asserts Lawrence never finished the cook, and the field test on the substance in the pitcher, amounting to 56.9 grams, was positive for pseudoephedrine only, not methamphetamine. Further, the substance weighing 56.9 grams was not subjected to confirmatory testing. Because only 2.63 grams related to the conspiracy to traffic charge was confirmed to be methamphetamine, Petitioner claims the OSBI criminalist could only make an assumption about the rest of the material. Petitioner argues this "gap" in the State's

evidence of the required 20-gram requirement for trafficking supported an instruction for

conspiracy to possess a non-trafficking quantity.

Respondent alleges this claim presents no basis for federal habeas corpus relief. The

OCCA denied the claim on direct appeal:

> [W]e find that there were no requests made to have the jury instructed on any lesser offenses, thus we are limited to review for plain error. *McHam v. State*, 126 P.3d 662, 670 (Okla. Crim. App. 2005). The evidence clearly and unequivocally supported the conviction for conspiracy to traffic in methamphetamine, thus there is no plain error.

*Turner*, No. F-2010-1128, slip op. at 5.

> "As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981), *cert. denied*, 525 U.S. 852 (1998)); *see also Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."), *cert. denied*, 514 U.S. 1115 (1995). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Maes*, 46 F.3d at 984 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

*Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999).

Furthermore, "a petitioner in a non-capital case is not entitled to habeas relief for the

failure to give a lesser included offense instruction, 'even if in our view there was sufficient

evidence to warrant the giving of an instruction on a lesser included offense.'" *Lujan v.*

*Tansy,* 2 F.3d 1031, 1036 (10th Cir. 1993) (quoting *Chavez v. Kerby,* 848 F.2d 1101, 1103

(10th Cir. 1988)). *See also Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) ("The Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases . . . .").

Petitioner did not request a lesser included instruction at trial, instead raising the issue on direct appeal. The OCCA determined the trial court did not err in failing to *sua sponte* instruct the jury on conspiracy to possess methamphetamine. This conclusion is supported by the record and is entitled to deference. *Gonzales*, 515 F.3d at 1126-27. Petitioner has not shown that the instructions given at trial deprived him of a fundamentally fair trial. *Nguyen*, 131 F.3d at 1357. This ground for habeas relief fails.

**Ground VI: Comments by the Trial Court**

Petitioner alleges in Ground VI that during voir dire, the trial court violated his rights to due process and a fair trial by diminishing and mis-defining the prosecution's burden to prove guilt beyond a reasonable doubt. He specifically claims the trial court departed from the uniform instructions which describe the State's burden of proof (OUJI-CF 2d 1-5, 1-8), and gave a misleading and incorrect "definition" that unconstitutionally lowered the State's burden of proof. The trial court told the jury that the phrases "proof beyond a reasonable doubt" and "reasonable doubt" meant whatever the jury thought the phrases meant:

> Now, the burden of proof is on the State beyond a reasonable doubt. Now, a person may be guilty of one and not guilty of the other two. He may be guilty of all three or not guilty of all three. Each stands on its own merit and you have to apply the burden of proof to it, which is beyond a reasonable doubt. Now, what does "beyond a reasonable doubt" mean? It means what you think it means. In Oklahoma, we do not define for you what "reasonable doubt"

28

means. "Reasonable doubt" means what each of you think it means. I promise you, no one is going to define it for you. The attorneys may try to nibble around the edges of it. If I stop them that's because I'm not going to let them tell you what they think reasonable doubt is because their view of what reasonable doubt is may be different than yours. Reasonable doubt means what you think it means. Is there anyone that has any difficulty with that phrase "beyond a reasonable doubt"? I expect you'll hear a lot of that today in the courtroom.

(Tr. I, 47-48).

The OCCA found no error in the trial court's statements:

[W]e find that there were no objections to the trial court's comments to the jury, thus we are limited to review for plain error. There is no plain error here, as the record reflects no error. *See Phillips v. State*, 989 P.2d 1017, 1028 (Okla. Crim. App. 1999) (reasonable doubt is self-explanatory to jurors and any attempt to define the phrase would tend to confuse the jury).

*Turner*, No. F-2010-1128, slip op. at 5.

The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. *Cf. Hopt v. Utah*, 120 U.S. 430, 440-441 (1887). Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, *see Jackson v. Virginia,* 443 U.S. at 320, n. 14, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. *Cf. Taylor v. Kentucky,* 436 U.S. 478, 485-486 (1978). Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Holland v. United States,* 348 U.S. 121, 140 (1954).

*Victor v. Nebraska*, 511 U.S. 1, 5 (1994).

Petitioner maintains the trial court's comment imposed no burden of proof on the State, thereby violating his right to due process and a fair trial. He compares the court's comments in his trial to the erroneous comments made in *Wansing v. Hargett*, 341 F.3d 1207

(10th Cir. 2003), cert. denied, 540 U.S. 1091 (2003).

In *Wansing*, the trial court, in response to a request for guidance by a potential juror, referenced an analogy about calling off a wedding at the last minute and told the potential jurors that reasonable doubt was a subjective matter which would vary with each case and that each juror would have to decide what was reasonable for them. *Wansing*, 341 F.3d at 1209-10, 1213. The Tenth Circuit found the trial court's remarks, which had suggested a wide range of standards comprising reasonable doubt and discretion as to what the standard should be, when taken as a whole, had unconstitutionally allowed the jury to think it could convict the defendant using an improper standard. *Id.* at 1215.

While the Wansing court gave a lengthy explanation to potential jurors, the comments in Petitioner's trial cannot be construed as a suggestion to jurors that they consider an improper burden of proof. *Victor*, 511 U.S. at 6 ("[T]he proper inquiry is not whether the instruction "could have" been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it.) (quotations and emphasis in original). Instead, the trial court's statements merely acknowledged that the term was self-explanatory.

This Court finds Petitioner cannot demonstrate that the OCCA's decision denying relief on this issue was contrary to, or an unreasonable application of, Supreme Court law. Therefore, habeas relief cannot be granted on this claim.

**Ground VII:  Ineffective Assistance of Trial Counsel**

Petitioner claims in Ground VII that his trial counsel was ineffective. Many of the

issues raised in Petitioner's direct appeal were reviewed under a plain error standard of review because of trial counsel's failure to object, and Petitioner asserts trial counsel displayed no sound strategy in his actions and inaction. The alleged errors and omissions by trial counsel are as follows:

A.  Failure to object to the admission of drug evidence which purported to form the basis for Petitioner's conviction for conspiracy to traffic, when the State had failed to establish the chain of custody.

B.  Failure to object to repeated prosecutorial misconduct in closing argument.

C.  Failure to request an instruction on the lesser included offense of conspiracy to possess methamphetamine.

D.  Failure to object to the lack of notice in the Information and Amended Information, when it became apparent at trial that the State was using evidence of previous, unrelated, and uncharged drug crimes to substantively prove the conspiracy charged in Count 3.

E.  Failure to object to the trial court's lowering of the burden of proof during voir dire.

F.  Failure to file a former jeopardy motion following the mistrial during which Petitioner's then-lawyer was disqualified.

Petitioner also claims trial counsel completely failed to cross-examine Kirby Lawrence on any deals he had made with the prosecution. Counsel allegedly neglected to point out that (1) the prosecutor was keeping his offer a secret from Lawrence, (2) Lawrence was hoping for leniency in this conspiracy case and in his previous Murray County drug case, (3) Lawrence had not yet entered a plea, and (4) Lawrence's lawyer, despite the offer which was supposedly going to be made by the State, could argue for an even lower sentence.

Furthermore, trial counsel failed to question Lawrence about the fact that despite his previous record of drug convictions, Lawrence was not charged with a trafficking offense, and if he had been charged with trafficking, Lawrence would have faced a mandatory life sentence without the possibility of parole.

Petitioner complains that shortly after Petitioner was convicted and sentenced, Lawrence received the benefit of a plea agreement which was the dismissal of the conspiracy to manufacture charge and a six-year sentence on his older Murray County possession charge. This was a more generous result than trial counsel and the trial court were told would occur. At Petitioner's sentencing hearing, counsel stated he wanted to introduce copies of court documents reflecting the deal Lawrence ultimately received, but counsel failed to argue that the prosecution's pretrial representations had concealed exculpatory evidence. (S.Tr. 41-42).

Trial counsel also allegedly failed to impeach John Richburg, who was called as a rebuttal witness. (Tr. II 367-71). Petitioner alleges Richburg had several pending Murray County cases, including two felony drug cases, one of which also charged use of a firearm in committing a felony and a misdemeanor for breaking and entering. Richburg allegedly was on a deferred sentence in the misdemeanor case at the time the two felony charges were filed against him. (Attachment to Motion to Supplement filed with the OCCA, Informations in Murray County Case Nos. CF-2010-122, CF-2010-172, CM–2010-281). Petitioner asserts that after his conspiracy trial concluded, the misdemeanor case against Richburg was

dismissed, and Richburg received deferred sentences in his two felony drug cases.

Petitioner further claims trial counsel failed to call witnesses who could have supported Petitioner's alibi defense. Petitioner testified that for most of the day on December 22, 2009, he was at a real estate closing in Gainesville, Texas. Petitioner and his girlfriend Melesa Yandell both testified that he spent the evening and night of December 22 with her. (Tr. II, 323-24, 345). No independent witnesses, however, were called to verify that Petitioner was in Texas for much of the day, even though such witnesses had been listed in discovery and were willing to testify. (O.R. 44-48, 60-64, 77-82). Petitioner claims this failure was significant, because State's witness Melanie Webb testified that Petitioner told her he had documents created to show he was in Texas on December 22, 2009. (Tr. 11, 277-78).

Petitioner also claims defense counsel was ineffective for failing to give pretrial notice of the testimony of Keith Buycks, who could have countered claims from prosecution witnesses that previous cooks and drug use were common at Petitioner's residence. Buycks allegedly was there frequently and saw no evidence of drug manufacturing or use.

The OCCA denied relief on direct appeal:

> Turner has not shown, either by record evidence or extraneous evidence, that he was prejudiced in the manner counsel represented him at trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that a defendant must show deficient performance and a prejudicial result).

*Turner*, No. F-2010-1128, slip op. at 5-6. Respondent alleges the OCCA's decision was not contrary to, or an unreasonable application of, Supreme Court law.

To prevail on a claim of ineffective assistance of counsel, the accused must prove deficient performance and prejudice. *Strickland*, 466 U.S. at 687. To prove deficiency, the accused must overcome the strong presumption that counsel's conduct fell outside of the wide range of professional conduct, including trial strategy. *Id*. at 689. To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. On habeas review, the Court does not examine whether the elements of *Strickland* have been met. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Instead, the pivotal question is whether the state court's application of *Strickland* was reasonable. *Id*.

As set forth above in Ground II, the trial court properly admitted the drug evidence under state law. In Ground IV, the Court found the contents of the Information did not deny Petitioner due process. In Ground V, the Court found the trial court did not err by not *sua sponte* instructing the jury on a lesser included offense. Furthermore, as discussed above in Grounds III and VI, neither the trial court's voir dire comments nor the prosecutor's conduct deprived Petitioner of a fundamentally fair trial. As will be discussed below in Ground VIII, Petitioner's claim that counsel was ineffective for failing to file a motion to dismiss based on double jeopardy also fails, because Petitioner's second trial was not barred by double jeopardy under the circumstances of the case.

Defense counsel is not ineffective for failing to raise a meritless objection. *Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006). *See also Miller v. Mullin*, 354 F.3d 1288,

1298 (10th Cir. 2004) (observing that "if the issue is meritless, its omission will not constitute deficient performance."). The Court finds that even if trial counsel had raised the above issues, Petitioner has not shown that the outcome of his trial would have been different.

Petitioner also claims defense counsel ineffectively cross-examined two State's witnesses, Kirby Lawrence and John Richburg. Regarding Lawrence, Petitioner claims trial counsel failed to point out that Lawrence was not charged with trafficking and had not yet entered a plea to the current charges at the time of trial. The record, however shows that trial counsel did ask Lawrence if he had been charged with trafficking, and Lawrence answered in the negative. (Tr. I, 198-99). Counsel also asked Lawrence whether charges in the current case still were pending, and Lawrence replied in the affirmative. (Tr. I, 199). Defense counsel also effectively covered Lawrence's prior felonies and another drug offense in Murray County which was pending at the time of trial. (Tr. I, 197-98). Based on Lawrence's testimony, defense counsel stated in his closing argument that, despite his extensive involvement, Lawrence had not been charged with trafficking and had not yet made a deal because he was seeking leniency for his testimony. (Tr. II, 399, 401-02). Based on this record, Petitioner cannot show that trial counsel's handling of this witness was deficient or prejudicial.

With respect to John Richburg, there was no evidence he had any adjudicated felonies or misdemeanors at the time of trial that could have been used to impeach his testimony. *See*

Okla. Stat. tit. 12, § 2609. (Tr. II, 368-71). Therefore trial counsel's handling of this rebuttal witness was brief with no substantial effect on the outcome of the trial. Petitioner has not shown that OCCA's decision on this witness was deficient or prejudicial.

Finally, Petitioner claims trial counsel was ineffective in failing to call an "independent" alibi witness to verify his presence in Texas on the day of the drug bust at his home. (Dkt. 10-1 at 46). In his motion to supplement the record and for an evidentiary hearing filed in his direct appeal, Petitioner offered an affidavit from Amy Myrick, a real estate agent who averred she was with Petitioner in Gainesville, Texas, at 9:00 a.m. on December 22, 2009. (Dkt. 10-2 at 7). Petitioner also offered an affidavit from Douglas D. Gerzmehle, Jr. who averred he saw Petitioner at Petitioner's girlfriend's home on the evenings of December 21 and December 22, 2009. (Dkt. 10-2 at 8). Testimony from either affiant, however, would have been irrelevant, because the conspiracy was not begun when Petitioner was at the Texas real estate closing. Further, Petitioner admitted he returned to his home after the real estate closing on December 22. (Tr. II, 342-22). Therefore, any "independent" testimony concerning his presence at the real estate closing or at his girlfriend's home would not have significantly supported his alibi defense. Under these circumstances, the Court finds the OCCA's decision on this issue was consistent with Supreme Court law.

Petitioner also references trial counsel's failure to secure the testimony of Keith Buycks who allegedly would have testified had never seen any evidence of drug activity or

drug manufacturing at Petitioner's home. (Dkt. 10-1 at 46; Dkt. 10-2 at 9). Buycks' testimony would not have changed the outcome of the trial, because he admitted he was not at Petitioner's house at the time of the methamphetamine cook.

The Court finds Petitioner has not shown that the OCCA's determination of his ineffective assistance of counsel claim was contrary to, or an unreasonable application of *Strickland*, pursuant to 28 U.S.C. § 2254(d). Therefore, his ineffectiveness claim, as well as his request for an evidentiary hearing, must be denied. *See Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1399 (2011) ("[W]hen the state-court record precludes habeas relief under the limitations of § 2254(d), a district court is not required to hold an evidentiary hearing.") (citation and internal quotation marks omitted).

**Ground VIII: Double Jeopardy**

Petitioner alleges the trial court erred in granting a mistrial in his initial trial, and his retrial violated the prohibition against double jeopardy. The record shows that in the first trial, Petitioner's defense counsel Timothy Lance informed the court that he had represented Kirby Lawrence in a previous Murray County drug possession case. That case had since been dismissed and refiled, and Lance no longer represented Lawrence. (Mistrial Tr. 23).

The trial judge met *in camera* with Lance, the prosecutor John Walton, and Lawrence's attorney Gordon Melson. There, it was learned that when Lawrence was arrested in the prior case, he may have said he was on his way to Petitioner's house. Because evidence of the prior relationship between Lance and Lawrence possibly would be presented

at Petitioner's trial, the court was very concerned about a conflict of interest. Therefore, the court decided to have an *in camera* hearing with Lawrence concerning the prior representation by Lance. (Mistrial Tr. 23-25).

Another area of serious concern to the court was a letter Lawrence sent to the trial judge. The judge had forwarded copies of the letter to Melson and the district attorney. The letter stated that part of the manufactured methamphetamine in Petitioner's case was to go to Lance. When Melson read the letter, he interviewed Lawrence to confirm that Lawrence was not to deliver any methamphetamine to Lance. Lawrence, however, understood that Petitioner was going to deliver it to Lance. The court again was concerned that this information could make Lance a witness and create another conflict of interest. (Mistrial Tr. 25-27).

Lawrence testified that before he started cooking the methamphetamine on December 22, 2009, he gave Petitioner some methamphetamine. Petitioner said he was going to see his girlfriend and then meet with "his NA buddy Tim Lance." Petitioner then would return to his house and pay Lawrence for the drugs Lawrence had just given him. Lawrence knew Lance, because Lance had represented him in an earlier case. Until that day, however, Lawrence did not know that Lance was Petitioner's friend. Lawrence asked Petitioner to find out if Lance could help him with a criminal case that had been dismissed and refiled (Mistrial Tr. 30-35).

It also was discovered that Lance had helped Petitioner and Petitioner's girlfriend

move furniture at the girlfriend's house on December 21, 2009. This created another conflict in that Lance could be called as a witness regarding Petitioner's alibi defense. (Mistrial Tr. 53-56). After consulting with the General Counsel's Office and the Oklahoma Bar Association, the trial court believed Lance could have a conflict of interest in two respects: (1) Lance could testify as an alibi witness about helping Petitioner and his girlfriend move furniture on December 21, and (2) Lance could testify that Petitioner did not obtain drugs from Lawrence and give them to Lance on December 22. (Mistrial Tr. 52).

The trial court explained to Petitioner that Lance had a conflict of interest and that if both Petitioner and Lawrence waived the conflict, the trial could proceed. Absent a waiver, a mistrial would be declared. The trial court believed that allowing Lance to remain in the case without a waiver would constitute reversible error. The court offered Petitioner the opportunity to consult with Lance and independent counsel, but pressed Petitioner for a decision, because the jury was waiting. (Mistrial Tr. 52, 59-60).

For a reason not fully explained on the record, the trial court also told Petitioner that he could face a federal RICO charge for ongoing manufacturing and distribution, which the court characterized as a federal offense. (Mistrial Tr. 64). Petitioner spoke to Lance and talked briefly with another lawyer about the conflict. When the trial court asked for an answer, Petitioner said that Lance should be disqualified. Petitioner also stated he would have liked to have had more time to consult with another lawyer. (Mistrial Tr. 59-74). The trial court declared a mistrial. (Mistrial Tr. 74-77).

Petitioner now alleges the mistrial was not necessary, and his "consent" to the mistrial was based on his receiving inaccurate information. He claims the trial judge make a mistake of law in invoking "manifest necessity" to declare a mistrial when there was no intractable conflict. Petitioner asserts the evidence that Lawrence supposedly was on his way to Petitioner's house when he was arrested for drug possession in 2008 was irrelevant to the charges in Petitioner's case, and Lance was not a necessary witness to Petitioner's whereabouts.

Petitioner asserts the trial court repeatedly misconstrued Lawrence's *in camera* testimony to the effect that when Petitioner left his house on the afternoon of December 22, 2009, Lawrence supposedly gave Petitioner 14 grams of methamphetamine, and Petitioner allegedly said he was going to share the drugs with Lance. (Mistrial Tr. 34-35). Petitioner maintains there was no statement implicating Lance in any criminal activity. Therefore, Lance was not a necessary witness to anything. Petitioner argues that because the trial court wrongly found a disqualifying conflict of interest where none existed and presented Petitioner with a false choice based on a mistake of law, jeopardy attached and Petitioner's retrial was barred by double jeopardy.

The OCCA found no merit in this argument on direct appeal:

[W]e find that the trial court did not abuse its discretion in ordering a mistrial during the first trial. *Napier v. State*, 821 P.2d 1062 (Okla. Crim. App. 1991). Manifest necessity existed for the mistrial, due to Turner's previous counsel having an obvious conflict of interest in the current representation of Turner based on related prior representation of co-defendant Lawrence. Neither Turner nor Lawrence waived the conflict. Rule 1.2 and 1.9, Oklahoma Rules

40

of Professional Conduct, Title 5, Ch. 1. App. 3-A (2008). Further, Counsel's own personal involvement with Turner, raising the potential of him being called as a witness in this case, would have violated the rules of professional conduct. Rule 3.7, Oklahoma Rules of Professional Conduct, Title 5, Ch. 1. App. 3-A (2008).

*Turner*, No. F-2010-1128, slip op. at 6.

The Double Jeopardy Clause protects an accused against multiple prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). When a trial is terminated over the objection of the accused, the test for lifting the double jeopardy bar to a second trial is whether a "manifest necessity" existed to support the termination of the first trial. *Arizona v. Washington*, 434 U.S. 497, 505 (1978). "Where a defendant requests or consents to a mistrial, there is no bar to retrial unless the government acted in a manner intended to induce a request for mistrial." *Walck v. Edmondson*, 472 F.3d 1227, 1236 n.4 (10th Cir. 2007) (citing *United States v. Jorn*, 400 U.S. 470, 485, 485 n.12 (1971))).

The Supreme Court has laid down no "rigid formula" on the determination of manifest necessity. *Wade v. Hunter*, 336 U.S. 684, 690 (1949). Instead, "a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." *Id.*

In cases such as this, where a mistrial is granted not at the request of the prosecutor for some tactical reason, but for reasons related to the petitioner's ability to receive a fair trial, the trial courts's determination is afforded "special respect." *Washington*, 434 U.S. at 510. Only if the trial court acted "irrationally or irresponsibly," or in other words, outside its

"sound discretion," will the court's determination be disturbed. *Id.* at 514.

The Court finds Petitioner has not demonstrated that the OCCA's decision denying his mistrial claim was contrary to, or an unreasonable application of, Supreme Court law, pursuant to 28 U.S.C. § 2254(d). Therefore, habeas corpus relief cannot be granted for this claim.

## Certificate of Appealability

Finally, the Court finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 3) is DENIED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 29th day of March 2017.

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**